**Below is the Order of the Court.**



_____
Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  13-12480 |
| Jessica L. Corbin, | |
| Debtor. | |
| Sloan Benson | Adv. No.  13-01378 |
| | ORDER ON CROSS MOTIONS |
| Plaintiff, | FOR SUMMARY JUDGMENT |
| v. | |
| Jessica L. Corbin, | |
| Defendant. | |

Order - 1

This matter came before the Court for hearing on December 11, 2013, on the Plaintiff's Motion for Partial Summary Judgment Finding Educational Loan is Non-dischargeable Debt Under 11 U.S.C. §523(a)(8) ("Motion for Summary Judgment", Dkt. No. 10) and the Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Partial Summary Judgment ("Cross Motion", Dkt. No. 12). David Crowe appeared for plaintiff Sloan Benson. Lee Grochmal appeared for defendant Jessica Corbin. The Court considered the arguments of counsel and the pleadings and files herein, including the Declaration of Sloan Benson in Support of Motion for Summary Judgment ("Benson Decl.", Dkt. No. 11), the Declaration of Jessica Corbin ("Corbin Decl.", Dkt. No. 13), and the plaintiff's Reply in Support of Motion for Partial Summary Judgment Finding Educational Loan is Non-Dischargeable Debt Under 11 U.S.C. §523(a)(8) ("Reply", Dkt. No. 14).

This case presents the important question of whether an obligation, held by a non-debtor co-signer of a student loan who paid off the student loan, is nondischargeable in the debtor's bankruptcy pursuant to 11 U.S.C. Section 523(a)(8)(A)(i) and (ii).[1] The facts are undisputed and both parties agree that the Court should resolve this matter on summary judgment.

## I. FACTS

Plaintiff Sloan Benson was the vice president at Greenpoint Technologies, Inc. Debtor/defendant Jessica Corbin was employed at Greenpoint as a receptionist. Benson agreed to co-sign Corbin's application for a student loan from SLMC Corporation ("SLMC") in May of 2007. SLMC, a federally insured lender, disbursed two $4,000 student loans to Corbin based upon the application (collectively, the "Loan"). *See* Benson Decl., Ex. A. Benson did not receive any consideration from Corbin for co-signing the Loan. Corbin used the proceeds of the

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §101 et seq., and to the Federal Rules of Bankruptcy Procedure, Rules 1001 et seq.

Loan to fund her educational expenses at the University of Phoenix.  Corbin left her employment at Greenpoint in March 2009.

In March 2011, SLMC contacted Benson, advised her that Corbin was delinquent on the Loan, and demanded payment.  Benson made periodic payments to SLMC in order to avoid adverse effects on her own credit rating as a result of Corbin's default.  Benson paid the Loan in full in the amount of $8,455.34 in November 2011.  Benson then filed suit against Corbin in January 2012, based on payment of the Loan.[2]  The state court entered a default judgment against Corbin for $8,455.34 (the "Judgment").  Benson Decl., Ex. E. The Judgment includes a finding of fact that "Benson cosigned the loan solely as an accommodation for the benefit of Corbin and received no proceeds or benefits from Corbin's loan."  *Id.*, p. 2.

Benson did not contact Corbin before making payment to SLMC.  As it turned out, Corbin was not actually delinquent, but rather, was in a period of forbearance while she continued to attend school.  Corbin Decl., para 3 and attached Exhibits.  Corbin argues that but for Benson's payment of the Loan, she would have had an opportunity to obtain additional forbearances and participate in payment plans which are now no longer available to her.

## II. DISCUSSION

A.      **Standards on Summary Judgment**

To prevail on a motion for summary judgment, the moving party must show by reference to pleadings, discovery, admissions, and affidavits, if any, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(a)(c), Fed.R.Civ.P.; Rule 7056.  The moving party is entitled to a judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 91

---

[2]  The state court suit also included other claims.

Order - 3

L.Ed. 2d 265, 106 S.Ct. 2548 (1986). *See also In re Irizarry*, 171 B.R. 874 (9th Cir. BAP 1994). In this case the parties have agreed that there are no disputed material facts, and that the Court should rule as a matter of law.

The party seeking to except a debt from discharge bears the burden of proving the elements of the applicable nondischarge section by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). Courts construe exceptions to discharge strictly against a creditor and liberally in favor of the debtor. *Id.* at 286-87. In a case under Section 523(a)(8), the creditor bears the initial burden of proving the debt exists and that the debt is of the type excepted from discharge under the discharge exception for student loan debt; if the creditor meets its burden, the debt may only be discharged if the debtor establishes that repayment of the debt would constitute an undue hardship. 11 U.S.C.A. §523(a)(8). *In re Maas,* 497 B.R. 863 (Bankr. W.D. Mich. 2013).

**B.    Exceptions to Discharge Under 11 U.S.C. §523(A)(8)**

Pursuant to 11 U.S.C. §523(a)(8), the following claims are excepted from discharge:

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

Section 523(a)(8) protects four categories of educational claims from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a government unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code. *In re Rumer*, 469 B.R. 553, 561 (Bankr. M.D. Pa.

Order - 4

2012).  Benson contends that she is entitled to summary judgment under subsections (i) and (ii) of Section 523(a)(8)(A).

### 1.    Section 523(a)(8)(A)(i).

Section 523(a)(8)(A)(i) excepts from discharge debts that are "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution."  Benson contends that because SLMC is a federally insured lender and the Loan was insured by a government unit, the Loan would be non-dischargeable pursuant to 523(a)(8)(A)(i) if it was being enforced against Corbin by SLMC.  Although Benson does not have a formal assignment of the Loan from SLMC, she argues that as an accommodation party who has paid off the debt under RCW 62A.3-419(e), she is entitled to enforce the original Loan against Corbin with all the rights of the original lender, including any rights to except the Loan from discharge.

Pursuant to RCW 62A.3-419(e) "An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party."  *Plein v. Lackey*, 149 Wash. 2d 214, 221-222 (2003). Whether a party is an accommodation party is a question of fact; the party asserting accommodation party status bears the burden of proof.  *Id.* at 223.   In *Plein v. Lackey*, a promissory note was indorsed over to the accommodating party and the corresponding deed of trust was assigned to the accommodating party after he paid the original lender.  Subsequently, the plaintiff, a junior lien holder, sued the accommodating party and argued that the deed of trust was void because the underlying debt was paid when the accommodating party paid the original lender.  The court focused on the defendant's status as an accommodating party and not on the indorsement of the note and assignment of the deed of trust.  The *Plein v. Lackey* court held that the accommodating

Order - 5

party was entitled to enforce the deed of trust securing the accommodated note because he held rights to enforce the note and also rights to any security interest or other collateral that secured payment. Applying state law regarding accommodation to this case, Benson argues that once she paid the loan to SLMC she stepped into its shoes and could enforce all available rights, including the right to have the debt excepted from discharge under 523(a)(8)(A)(i).

Corbin counters that state law does not control on this issue and that under federal law, Benson did not acquire any right to assert the nondischargeability of the Loan even if she is subrogated to the rights of SLMC. Corbin relies on the decision of the Ninth Circuit Court of Appeals in *National Collection Agency, Inc. v. Trahan*, 624 F.2d 906, 907-908 (9th Cir. 1980), in arguing that a subrogated party cannot assert the nondischargeability of the subrogated debt. Benson replies that subsequent to the Ninth Circuit's ruling in *Trahan*, courts in this circuit have chipped away at Trahan's broad ruling, citing *In re Boyajian*, 564 F.3d 1088, 1091 (9th Cir. 2009), and *In re Tooks*, 76 B.R. 162, 164 (Bankr. S.D. Cal. 1987). Benson asks this Court to limit *Trahan's* holding to cases under Section 523(a)(1), following the lead of the *Tooks* court.

In general, "subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right.... Subrogation places the party paying the loss or claim (the 'subrogee') in the shoes of the person who suffered the loss ('the subrogor'). Thus, when the doctrine of subrogation applies, the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim." *Hamada v. Far East Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir.2002). *See also Han v. United States*, 944 F.2d 526, 529 (9th Cir.1991); *Milgard Tempering, Inc. v. Darosa (In re Darosa)*, 318 B.R. 871, 877 (9th Cir. BAP 2004).

*Trahan* is a pre-Bankruptcy Code case. In that case, the debtor was required under California law to provide security for the payment of state sales tax. The debtor's surety posted a

Order - 6

$2,000 bond as security and paid the taxes after the debtor failed to pay.  The surety then sought

recovery of the $2,000 in the debtor's bankruptcy proceeding, arguing that the debt was

nondischargeable tax debt.  The question before the court was whether the Section 523(a)(1)

exception to discharge for tax debts owed to government entities applied to a debt held by a

surety which had paid the underlying tax debt to the state.  The surety argued that under

California surety law it had a right to enforce every remedy the state would have had against the

debtor.  The Ninth Circuit Court of Appeals, citing only policy reasons, concluded that a state

law that is contrary to federal bankruptcy law must yield:

> The statutory exception for tax debts runs counter to the general
> policy of the Bankruptcy Act favoring discharge of debts and the
> resulting fresh start it provides to debtors.  …Interpreting 11
> U.S.C. § 35 broadly to include debts owed to a surety would not
> promote the collection of taxes because the state is paid by the
> surety whether or not the bankrupt's subsequent debt to the surety
> is nondischargeable... [A]ny statutory right that [the Surety] might
> have to recover against [the Debtor] would conflict with the
> federal bankruptcy policy favoring the discharge of debts.

*National Collection Agency, Inc. v. Trahan*, 624 F.2d 906, 907 (citations omitted).  The court

also rejected the surety's argument that it stood in the place of the state under the doctrine of

equitable subrogation applied by the courts in *Gilbert v. United States Fidelity & Guaranty Co.*,

180 F.Supp. 794 (M.D. Ga. 1959), *aff'd*, 274 F.2d 823 (5th Cir. 1960); and *St. Paul-Mercury*

*Indemnity Co. v. Donaldson*, 225 S.C. 476, 83 S.E.2d 159 (1954).  The Ninth Circuit rejected

these cases in light of "the overriding policy favoring dischargeability…."  *Id*. at 908.

Importantly, however, the court was not asked to and did not comment in any way on statutory

subrogation under Section 509.

   *Tooks* and *Boyajian*, cases relied on by Benson, do not involve student loans at all.

Instead, they each involve a debtor who was alleged to have obtained the original debt

dishonestly.[3]  The courts in these cases expressed that *Trahan*'s policy argument protecting the debtor's right to a discharge did not apply to a dishonest debtor.   In *Boyajian*, the debtors submitted materially false financial statements in order to obtain funds from the original lender.  A third party, to whom the debt was later assigned, sought to except the debt from discharge under Section 523(a)(2).   In analyzing whether the third party could assert nondischargeability under Section 523(a)(2), the court acknowledged the general principles of assignment law, that an assignee steps into the shoes of the assignor, and held that the assignee could pursue nondischargeability under that Section.  The court specifically focused on the bad acts of the debtors in obtaining the debt and pointed out the perverse result if a dishonest debtor could achieve a discharge through the fortuity that their creditor chose to assign the debt.

In *Tooks*, the court analyzed nondischargeability under both Sections 523(a)(4) and 523(a)(6).  The debtor, an attorney, had misappropriated funds from a client.  There was a state court criminal conviction and restitution order entered against the debtor, which the parties agreed was non-dischargeable.  The State Bar of California, which had paid the client partial reimbursement for the funds misappropriated from its "Client Security Fund," obtained a written assignment of the client's rights against the defendant in exchange for the partial payment and sought a determination that its claim was nondischargeable in the attorney's bankruptcy proceeding.  The *Tooks* court distinguished its facts from the facts in *Trahan* and declined to follow *Trahan*, stating that to do otherwise would let a dishonest debtor "know that he will be protected from the financial consequence of his wrongdoing in situations where a surety agrees to pay the victim."   *In re Tooks*, 76 B.R. at 164.

Neither *Boyajian* nor *Tooks* is directly applicable under the stipulated facts set forth on

---

[3]  Benson also cites *In re Ota*, 192 B.R. 545 (9th Cir. BAP 1996).  However, that case concerns an objection to discharge under Section 727 and not Section 523.

this record. The cases demonstrate only that where the debtor is alleged to have incurred the debt through fraud or dishonesty, the courts find the policy of favoring discharge less important. There is no evidence in this record of any dishonesty on Corbin's part. Moreover, in these cases, the debt at issue was assigned by the creditor to a third party and the third party was not asserting subrogation rights, as Benson is in this case.

In her Reply, Benson cites *Gorosh v. Posner (In re Posner)*, 434 B.R. 800 (Bankr. E.D. Mich. 2010), the only case cited by the parties or found by the Court that is close to being on point with the facts here. In *Posner*, the plaintiff, Ms. Gorosh, co-signed several student loans for the debtor, who was a friend's daughter. The debtor defaulted and the plaintiff was called upon, and did, pay off the loans. The plaintiff obtained a state court judgment against the defendant, which she sought to except from discharge under Section 523(a)(8) following the debtor's bankruptcy filing. The court held that the plaintiff was a "co-borrower" and not a "lender" protected under Section 523(a)(8)(A)(i). The court found no authority for subrogation of the plaintiff to the rights of the underlying lenders stating "[t]he Court has found no authority to support the proposition that a co-borrower who pays an obligation it contractually owes under the terms of a student loan note is entitled to be subrogated to the rights of the party receiving payment." *Id.* at 806. The court did not consider statutory subrogation under Section 509 or under state law nor did it consider Section 523(a)(8)(A)(ii).

Statutory subrogation under Section 509 was not addressed in *Trahan, Boyajian*, *Tooks* or *Posner*. Section 509(a) provides that except as provided in subsections (b) and (c), "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." The Ninth Circuit addressed Section 509 in *In re Hamada,* 291 F.3d at 650-651. In that case, the

court discussed the rights of two creditors of the debtor: Fidelity and Deposit Company of Maryland ("Fidelity"), which provided a supersedes bond to the debtor in connection with the debtor's litigation with his former partner, Michelson, who contended that the debtor breached his fiduciary duty and committed fraud; and Far East National Bank ("Far East") which issued a letter of credit to Fidelity to secure the debtor's obligation to pay Fidelity if the bond was called. Michelson was successful, and, following a bankruptcy filing by the debtor, obtained a nondischargeable judgment against the debtor. Michelson made demand on Fidelity, which paid him, and Fidelity then presented the letter of credit to Far East, which honored the letter. Far East took an assignment of Fidelity's rights, including any right of subrogation Fidelity had to the Michelson judgment. Initially, the court described three types of subrogation: "Conventional" or "contractual" subrogation, which arises from an express or implied contract between the parties; "equitable" subrogation, a legal fiction which permits a party who satisfies another's obligation to recover from the party who is primarily liable as a matter of equity; and statutory subrogation, which arises under a statute, such as Section 509. *In re Hamada*, 291 F.3d at 649 (citations omitted). The court concluded that Far East had no subrogation right under Section 509(a) because it was not liable "with the debtor on" nor had it "secured" a claim of a creditor against the debtor. Instead, the court followed the Tenth Circuit Court of Appeals in *CCF, Inc. v. First National Bank & Trust Co.of Okmulgee (In re Slamans)*, 69 F.3d 468, 475-476 (10th Cir. 1995), in holding that a letter of credit issuer's liability "'is primary whereas a guarantor's obligation is secondary-the guarantor is *only* obligated to pay if the principal defaults on the debt the principal owes.'" *In re Hamada*, 291 F.3d at 650, quoting *Tudor Dev. Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357, 362 (3d Cir. 1992)(emphasis in original). Further, seeming to undercut the ruling in *Trahan*, the court noted that Fidelity, as a surety or guarantor,

Order - 10

would satisfy the requirement of Section 509(a). Without addressing *Trahan*, the court held that Far East had not met the elements required for equitable subrogation under California law. The court then addressed *Trahan* when it denied Far East's claim that it had a right to claim an exception to discharge based upon its assignment of Fidelity's subrogation rights, stating "[h]owever, we have previously held that sureties do not have a right of subrogation under such circumstances." *In re Hamada,* 291 F. 3d at 653. Thus, the court reaffirmed its ruling in *Trahan* that a surety could not assert nondischarge rights through subrogation, notwithstanding its statement in dicta that Fidelity, as a guarantor, met the Section 509(a) requirement of being liable with the debtor on or having secured a claim of a creditor against the debtor.

Like the plaintiff in *Hamada*, Benson appears to meet the requirements of Section 509 in that it is undisputed that she signed the Loan as an accommodation party of Corbin, who was the primary obligor under the Loan. None of the exceptions in Section 509(b) apply to Corbin: it is undisputed that she has not elected reimbursement under Section 502(e) and she did not receive any of the Loan proceeds. Nevertheless, finding that *Trahan* has continued vitality in the Ninth Circuit, and applying that court's policy analysis to the student loan context, the Court concludes that (1) the statutory exception for student loan obligations runs counter to the general policy of the Bankruptcy Code favoring discharge of debts and the resulting fresh start it provides to debtors; (2) Interpreting 523(a)(8)(A)(i) broadly to include debts owed an accommodation party or guarantor would not promote the collection of student loans because the lender is paid by the accommodation party/guarantor whether or not the debtor's subsequent debt to the accommodation party/guarantor is nondischargeable; and (3) any state law right (i.e. under the RCW 62A.3-419) the accommodation party might have to recover against the debtor would

conflict with the federal policy favoring the discharge of debts.[4]

Because *Trahan* continues to be binding authority in the Ninth Circuit, and because policy considerations favor discharge of the debt over protecting the rights of a subrogated party, Benson's request for summary judgment under 523(a)(8)(A)(i) is denied.

### 2.    Section 523(a)(8)(A)(ii).

Section 523(a)(8) was amended in 2005 by Congress to make a broader range of student loan debt nondischargeable, regardless of the nature of the lender.  Specifically, Section 523(a)(8)(A)(ii) was added, covering loans made by nongovernmental and profit-making organizations, and making nondischargeable "an obligation to repay funds received as an educational benefit, scholarship, or stipend."  Unlike under 523(a)(8)(A)(i) or 523(a)(8)(B), there is no requirement under 523(a)(8)(A)(ii) that the obligation be in any way related to a government unit.

The Code does not define the term "educational benefit," but a majority of courts have held that a loan qualifies as an "educational benefit" if the stated purpose for the loan is to fund educational expenses.  *In re Maas*, 497 B.R.at 869-870.  In fact, courts have interpreted the phrase "obligation to repay funds received as an educational benefit" so broadly that it seems to this Court that Section 523(a)(8)(A)(i) is almost subsumed by subsection (ii).  *See In re Beesley*, 2013 WL 5134404, *4 (Bankr. W.D. Pa. Sept. 13, 2013)(noting that loans could be "funds received as an educational benefit").  In this case, however, Benson did not make a loan to Corbin.  Instead, she provided her accommodation to SLMC to facilitate the Loan to Corbin.  Another way to put it would be that in exchange for Benson's co-signing the Loan, Corbin

---

[4]  It should be noted that the courts are divided as to whether equitable subrogation even applies in bankruptcy proceedings given the codification of the right in Section 509 and similarly divided as to whether Section 509 preempts or supplements the principles of the Uniform Commercial Code related to accommodation parties.  *See, e.g., In re Slamans*, 69 F.3d 468, fn. 7 (10th Cir. 1995)(Section 509 alone governs subrogation rights in bankruptcy); *In re Celotex Corp.*, 289 B.R. 460  (Bankr. M.D. Fla. 2003); *In re Fiesole Trading Corp.*, 316 B.R. 198 (Bankr. D. Mass 2004).

Order - 12

received funds for the purpose of paying her educational expenses.  At issue is whether Benson's co-signing the Loan as an accommodation party constitutes an "educational benefit."

Published cases addressing 523(a)(8)(A)(ii) address a variety of circumstances, none of which are similar to the circumstances in this case.  These cases merely support the proposition that subsection (ii) is interpreted very broadly.  For example, in *In re Baiocchi* 389 B.R. 828, 831-832 (Bankr. E.D. Wis. 2008), the debtor's employer offered an educational expense reimbursement plan under which it reimbursed fifty percent of the cost of tuition and books. Under the program, the employee was required to repay any funds paid under the program during the two years prior to departure from the company.  In finding the obligation to repay the employer nondischargeable under Section 523(a)(8)(A)(ii), the court stated:

> BAPCPA's separation of the phrase "obligation to repay funds received as an educational benefit" from the phrases "loan made, insured or guaranteed by a governmental unit" and "program funded in whole or in part by a nonprofit institution" in § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit obligations, such as those in the instant case.

*Id.* at 831-832.

When analyzing subsection (ii), courts pay no attention to who the lender is, but focus instead entirely on whether, in the plain language of the subsection, the obligation is "to repay funds received as an educational benefit" as reflected by the debtor's agreement and intent to use the funds at the time the obligation arose.  *See, e.g., In re Roy*, 2010 WL 1523996 (Bankr. D. N.J. Apr. 15, 2010)(court concludes that debt owed to a private company for providing tutoring services to debtor's child provided an educational benefit, and was not dischargeable under 523(a)(8)(A)(ii)); *In re Carrow*, 2011 WL 802847 (Bankr. N.D. Mar. 2, 2011)(court said in dicta that when debtor certified on each promissory note that she would use the proceeds for qualified higher education expenses for costs associated with her attendance at school, the loans were an "educational benefit" for purposes of section 523(a)(8)(A)(ii)); *In re Skipworth*, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010)(court found that loan from Citibank incurred for the purpose of paying for debtor's bar review course was an obligation to repay funds received as an

educational benefit).  Under these courts' interpretations, it appears that almost any obligation incurred for the purpose of paying an education-related expense is excepted from discharge under 523(a)(8)(A)(ii).  Because the focus of the inquiry is on the purpose of the debt at the time it was incurred, there is no requirement under 523(a)(8)(A)(ii) that the debt is owed to the original lender at the time of bankruptcy.  *See In re Maas*, 497 BR at 870-871.

Corbin relies on *Corso v. Walker*, 449 B.R. 838 (W.D. Pa. 2011), in arguing that Benson's debt stems solely from the Judgment and not from any educational debt which is nondischargeable.  In *Corso*, the debtor, Walker, signed her ex-husband's name on applications for two federal student loans and notes for their daughter's college expenses.  In a subsequent marital settlement agreement, the debtor agreed to pay those loans.  When the debtor filed bankruptcy, her ex-husband argued that her obligation to pay the student loans pursuant to the marital settlement was not dischargeable under Section 523(a)(8).  The bankruptcy court found that the debtor signed the notes in her husband's name while they were still married and with his authority.  On appeal, the district court concluded that Section 523(a)(8) did not apply because the debtor's agreement to pay the student loans arose under the marital settlement agreement, which was executed after the student loans were made, and because her obligation was to her ex-husband and not to the lender.  *Corso* is easily distinguished from this case, however, in that the debtor's ex-husband was not the holder of an obligation to repay funds received as an educational benefit; instead, he was the holder of an obligation arising under a marital settlement agreement entered into after the student loans were made.[5]

Benson cites a more recent case, *In re Belforte*, 2012 WL 4620987 *7 (Bankr. D. Mass. Oct. 1, 2012), where the court examined the breadth of the interpretation of "educational benefit" and suggested that courts should look at whether the loan serves a business purpose or an educational purpose in order to make that determination.  The court there found that the debtor's loan from her credit union, which she requested for the purpose of paying tuition and buying books for her children, fell into the "educational benefit" category even though the credit union

---

[5]  Benson argues that *Corso* improperly relied on *Posner*, but the *Corso* decision does not cite *Posner*.  *Posner* did not address Section 523(a)(8)(A)(ii) at all; Benson theorizes that is because the loans at issue there were advanced before subsection (ii) was added to Section 523(a)(8).

made no attempt to oversee how the debtor actually used the funds and the loan was made in the form of a general unsecured line of credit.

There is no dispute here that the sole purpose of Benson's execution of the Loan as an accommodation party was to help Corbin to get the Loan. There was no business purpose to the Loan on either the part of Benson or Corbin. Benson received no consideration for her signature. Corbin intended to and did use the funds she received to pay for educational expenses. Finding no reason or authority in the Ninth Circuit to narrow the interpretation of subsection (ii), this Court concludes that the provision of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt. The Judgment Benson holds against Corbin therefore represents an obligation to repay the funds received as an educational benefit to the debtor. Accordingly, the Court finds that Benson has met her burden of proof under Section 523(a)(8)(A)(ii).[6]

**C.      Corbin's Request for Fees**

Ms. Corbin requested attorney's fees for responding to the Motion for Summary Judgment under Section 523(d). That section, however, only applies to suits under Section 523(a)(2). Because this action arises under Section 523(a)(8), Ms. Corbin's request is denied.

**ORDER**

Now, therefore, for the foregoing reasons, it is hereby ORDERED that:

1.      Plaintiff's Motion for Summary Judgment under 11 U.S.C. §523(a)(8)(A)(i) is DENIED;

2.      Defendant's Cross Motion under 11 U.S.C. §523(a)(8)(A)(i) is GRANTED;

---

[6]  Neither party has sought summary judgment on the question whether excepting the Judgment from discharge will impose an undue hardship on Corbin. Accordingly, resolution of that question must await further proceedings. Corbin, however, has the burden of proof on that issue. In addition, the Court reaches no conclusion about whether and how Benson's payment of the Loan when SLMC demanded payment should affect the outcome, given the parties' apparent agreement that SLMC was mistaken and Corbin was not actually in default.

3.     Plaintiff's Motion for Summary Judgment under 11 U.S.C. §523(a)(8)(A)(ii) is GRANTED to the extent that she has satisfied her burden of proving that she holds an obligation against Corbin to repay funds received as an educational benefit, and the burden shifts to the defendant to prove that excepting Benson's Judgment from discharge will impose an undue hardship on her;

4.     Defendant's Cross Motion under 11 U.S.C. §523(a)(8)(A)(ii) is DENIED; and

5.     Defendant's request for attorney's fees is DENIED.

///END OF ORDER///